

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CLEMENTINE BUSH | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. 1 04-CV 3261 |
| | : | |
| SPELMAN COLLEGE, | : | JURY TRIAL DEMANDED |
| ARAMARK MANAGEMENT SERVICES | : | |
| LIMITED PARTNERSHIP DBA | : | |
| ARAMARK SERVICEMASTER | : | |
| FACILITY SERVICES, | : | |
| ROBERT D. FLANIGAN, JR., | : | |
| JOHN BOWEN, AND GARY PERRY | : | |
| | : | |
| Defendants | : | |

-CAM

## PLAINTIFF'S ORIGINAL COMPLAINT

### A. PRELIMINARY STATEMENT

1. This is an action for declaratory, injunctive, compensatory and punitive damages, costs, and attorney's fees, and other appropriate relief, to redress the deprivation of Plaintiff's rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and rights secured by statutory and common law of the State of Georgia, for sex discrimination, hostile and abusive work environment discrimination based on gender, and related tortious

1

conduct, which occurred at the Spelman College. ("Spelman" or "College") in Atlanta, Georgia.

**B. JURISDICTION**

2. Jurisdiction is vested in this Court pursuant to 28 U.S.C. §§ 1331 and 1367(a).

**C. PARTIES**

3. Plaintiff, CLEMENTINE BUSH ("Plaintiff"), is a female citizen of the United States of America and the State of Georgia, and is subject to the jurisdiction of the court.

4. Defendant SPELMAN COLLEGE ("Spelman" or "College") is a non-profit corporation incorporated in the State of Georgia, and is subject to the jurisdiction of the court. Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b) and is an "educational institution" within the meaning of 20 U.S.C. § 1681, and can be served through its Registered Agent, Beverly Daniel Tatum, 350 Spelman Lane SW, Atlanta, Georgia 30314.

5. Defendant ARAMARK MANAGEMENT SERVICES LIMITED PARTNERSHIP DBA ARAMARK SERVICEMASTER FACILITY SERVICES, ("Aramark") Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b), and can be served through its Registered Agent, The Corporation Trust Co. 1201 Peachtree Street, N.E., Atlanta, Georgia 30361.

2

6. ROBERT D. FLANIGAN ("Defendant Flanigan" or (Flanigan"), Vice President & Treasurer of Spelman College, is being sued in his individual and official capacity, and was acting in the scope of his employment when he instituted and/or participated in a pattern of unfounded accusations, harassing and demeaning conduct designed to disparage Plaintiff in the eyes of her employer for the purpose of getting her terminated from her employment with Defendant Aramark, and can be served at Spelman College, 350 Spelman lane, Atlanta, Georgia 30314.

7. JOHN BOWDEN ("Defendant Bowden" or "Bowden"), Director of Physical Plant, is being sued in his individual and official capacity, and was acting in the scope of his employment when he instituted and/or participated in a pattern of unfounded accusations, harassing and demeaning conduct designed to disparage Plaintiff in the eyes of her employer for the purpose of getting her terminated from her employment with Defendant Aramark, and can be served at Spelman College, 350 Spelman lane, Atlanta, Georgia 30314.

8. GARY PERRY ("Defendant Perry" or "Perry"), Aramark ServiceMaster Facility Services Facility Manager at Spelman College, Plaintiff's immediate supervisor, is being sued in his individual and official capacity, and was acting in the scope of his employment when he instituted and/or participated in a

3

pattern of unfounded accusations, harassing and demeaning conduct designed to disparage Plaintiff in the eyes of her employer for the purpose of getting her terminated from her employment with Defendant Aramark, and can be served at Spelman College, 350 Spelman lane, Atlanta, Georgia 30314.

### D. FACTUAL ALLEGATIONS

9.  Plaintiff worked in the employment of Spelman College cleaning contractors from about June 2000 until about September 30, 2003.

10. Plaintiff was promoted within 90 days to an assistant manager under cleaning contractor JSH Cleaning Company ("JSH"), not a party in this lawsuit, and after JSH lost the cleaning contract around August 2001, Aramark became new contractor, Plaintiff was retained and at this time Plaintiff was forced to take a pay cut and a demotion from assistant manager to supervisor.

11. Under JSH, Plaintiff performed her job in an exemplary manner.

12. Within three months after Aramark took over cleaning contract, Flanigan and Bowen began a pattern of accusing Plaintiff of sabotaging the Aramark cleaning crew and manufacturing bogus reasons to have Plaintiff terminated from her employment.

13. Plaintiff was not properly warned in accordance with Aramark's policies that her job performance was about to cause her to lose her job.

14. Plaintiff was not told why her work was not acceptable to Spelman and/or to Flanigan and/or Bowden and/or Perry until about August 27, 2003.

15. Assuming the alleged deficient job performance was accurate, Plaintiff was not given a reasonable chance to correct any alleged deficient job performance.

16. Regarding the first Write Up dated August 27, 2003, Perry simply wrote, "Trash left on the Science dock."

17. At that time Plaintiff was working as a supervisor on her regular 2rd Shift from about 2:00 p.m. to 10:00 p.m.; the Day Shift works from 7 a.m. to 3:30 p.m.

18. Perry did not indicate in his Write Up any particulars about this trash.

19. Perry did not indicate what trash he was talking about.

20. Perry did not indicate when this trash was discovered.

21. Perry did indicate who left the trash.

22. Perry did not indicate whether trash was left any of Plaintiff's subordinate employees who worked the 2rd Shift the previous day, August 26, 2003.

5

23. Perry did not indicate how he thought Plaintiff failed to properly supervise any of her 25 to 30 subordinate employees on the 2nd Shift.

24. Perry did not properly investigate the totality of circumstances concerning the trash before giving Plaintiff a written reprimand.

25. Perry agreed that Plaintiff couldn't be responsible for what happened after Plaintiff completed her shift.

26. Perry's August 27, 2003 Write Up failed to notify Plaintiff that her performance as a supervisor was about to cause her to lose her job and it failed to point out to her what was unacceptable about her supervisory performance, and failed to give her any specific time frame and guidelines on what to correct.

27. Nine days later, Plaintiff received from Perry a Corrective Action Plan dated September 5, 2003.

28. The Corrective Action Plan talked about employees' tardiness, completing job assignments, and disciplining employees; none of these matters were listed in Perry's August 27, 2003 Write Up.

29. Perry failed to notify Plaintiff that her job was in jeopardy because of Plaintiff's alleged deficient supervision of

6

subordinate employees' tardiness, job assignments or employees' discipline.

30. Assuming the alleged deficiencies occurred, nine days would not have given Plaintiff a fair opportunity to make any meaningful corrections of a subordinate staff of about 25 to 30 employees.

31. About twenty-five days later, Defendants terminated Plaintiff on September 30, 2003.

32. Out of the twenty-five day, Plaintiff was on vacation from September 8, 2003 through September 22, 2003.

33. On Sunday, September 21, 2003, Perry telephoned Plaintiff at home and instructed her to report to clean on Third Shift.

34. Plaintiff informed Perry she could report to Third Shift on Monday, September 22, 2003 at about 10:00 p.m., the start time for the Third Shift.

35. Perry indicated that he could not find anyone to clean on Third Shift.

36. Perry informed Plaintiff Annette Brice would be supervising Third Shift and that Plaintiff would only need to help out with the cleaning.

37. On or about September 22, 2003, Plaintiff met with Annette Brice, an assistant manager who supervises the Third

7

Shift.  Brice reiterated to Plaintiff, "you know you are here to clean."

38.  Brice further made it clear to Plaintiff that Brice did not need Plaintiff to perform any supervisory duties on the Third Shift.

39.  On September 25, 2003, Plaintiff reported to work as a cleaner on the Third Shift at or about 10:00 p.m. and worked until the shift ended at about 6:00 a.m. Friday morning, September 26, 2003.

40.  Plaintiff was off for the weekend and returned to Third Shift on September 28, 2003.

41.  Perry allegedly put instructions on Plaintiff's desk on September 25, 2003.

42.  Plaintiff allegedly let the instructions sit on her desk for 3 days; however, between September 25, 2003 and September 30, 2003, Plaintiff only worked two days.

43.  Plaintiff was terminated on September 30, 2003.

44.  Perry did not follow employer's policies and procedures.

45.  Aramark's policy, Employee Handbook, page 7, states, "In all but the most serious cases, each employee will be advised of the incorrect behavior, and given an opportunity to correct the problem.  This system is the only method used by

ARAMARK Facility Services for the purpose of employee discipline."

46. Perry informed Plaintiff that Defendant Bowen didn't like dealing with women anyway.

47. Perry informed Plaintiff that Defendant Flanigar had something against Plaintiff.

48. Perry informed Plaintiff that he didn't have a problem with Plaintiff's job performance or with Plaintiff as an employee.

49. Perry informed Plaintiff that his superiors wanted him and Brice to set up an inspection for purpose of writing up Plaintiff for staples "and stuff" allegedly found in the carpet during the alleged inspection, and Perry informed Plaintiff that it took him about four hours just to think of something to put on that paper.

50. Perry informed Plaintiff that Flanigan "gets pissed off when he just sees you" and "you always seem to be an issue with him."

51. Perry informed Plaintiff that Flanigan told Aramark that he wanted Plaintiff gone from Spelman campus and that everything was being blamed on Plaintiff.

52. During the period of plaintiff's employment, Defendants Flanigan, Bowden communicated with Defendants Aramark and Perry to

9

discipline and remove Plaintiff from her job in a manner different from similarly situated male employees.

53. Despite knowing Plaintiff was properly performing her job, Defendant Perry, with instructions from his superiors, manufactured reasons to terminate Plaintiff from her employment.

54. Defendants Flanigan and Bowden made it known to Defendants Aramark and Perry repeatedly that they had something against Plaintiff and did not want to see Plaintiff's employment continue with Aramark.

55. During the course of Plaintiff's employment, she was told repeatedly that Defendants Flanigan and Bowden did not like her and wanted her fired

56. During the course of Plaintiff's vacation in 2003, Plaintiff heard rumors of her termination and received harassing telephone calls from Aramark regarding filling a supervisor's position when none was available to Plaintiff's knowledge.

57. At all times relevant herein, Defendants Flanigan, Bowden, and Perry were acting in the scope of their employment.

58. Defendants Spelman and Aramark owed Plaintiff a duty of care to ensure the safety and well being of Plaintiff, and others similarly situated, as afforded in an environment free of harassment and abuse.

59. This overall duty of care encompassed a duty to supervise the conduct of all supervisory personnel, including Defendants Flanigan, Bowden, Perry, and others, to enforce rules

and regulations necessary for the protection of employees, and to take appropriate measures to protect employees from the misconduct of supervisory personnel such as Defendants Flanigan, Bowden, and Perry, and others.

60. Defendants Flanigan, Bowden, and Perry, and others, in the course and scope of their duties as supervisory employees, had a duty to exercise due care to protect Plaintiff from harassment and abuse, including from their own abuse.

61. Defendants Spelman and Aramark had a duty to protect Plaintiff, and others similarly situated, by exercising due care in investigating Plaintiff's complaints of harassment, abuse, and other acts of discrimination by Defendants Flanigan, Bowden, Perry and others.

62. Defendants Spelman and Aramark had a duty to take reasonable precautions to protect Plaintiff, and others similarly situated, from harassment, abuse and discrimination based on gender that reasonably could be anticipated and to take prompt and appropriate remedial action to prevent such harassment from occurring or continuing, and if necessary, to remove harassing and abusive supervisory personnel from the Campus.

63. On or about September 30, 2003, Plaintiff was terminated from her employment with Defendant Aramark, at the

urging and demand of Defendants Flanigan and Bowden.

64.   As a result of Defendants' joint and individual conduct, Plaintiff suffered great emotional anguish, loss of sleep, headaches, upset stomach, and other such illnesses due to job-related stress, and loss of income and benefits.

65.   The conduct of Defendants amounted to discrimination in the terms, conditions, and privileges of Plaintiff's employment, in violation of Title VII of the Civil Rights Act of 1964 and other law.

66.   Plaintiff timely filed with the Equal Employment Opportunity Commission (EEOC) a charge of discrimination against defendants. Plaintiff received a notice of the right to sue from the EEOC within 90 days of the filing of this complaint. A copy of the notice of the right to sue is attached as Exhibit 1.

67.   All conditions precedent have been performed or have occurred.

### FIRST CLAIM

### GENDER HARASSMENT UNDER TITLE VII

68.   Plaintiff hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 67 above as if fully set forth herein.

69.   The conduct of Defendants Flanigan, Bowden, Aramark, and Perry, as alleged above, affected the benefits,

assignments, terms, conditions or privileges of the Plaintiff's employment.

70. The harassment of Plaintiff by Defendants, as alleged above, was unwelcome, and Plaintiff at all times advised Defendants Aramark and Perry who committed such harassment, in concert with Defendants Flanigan and Bowden, that this conduct was unwelcome.

71. The harassment of the Plaintiff by Defendants as alleged above was based on Plaintiff's gender.

72. The harassment of Plaintiff by Defendants, as alleged above, was sufficiently pervasive and severe to create an abusive and hostile work environment for the Plaintiff.

73. The conduct of Defendants Flanigan and Bowden, as alleged above, was engaged in while they were acting as agents of the Defendant Spelman College in the scope of and during the course of their employment.

74. The conduct of Defendants Aramark and Perry, as alleged above, was engaged in while they were acting as agents of the Defendant Aramark Management Services Limited

Partnership dba Aramark Servicemaster Facility Services in the scope of and during the course of their employment.

75. Defendants Spelman and Aramark were fully informed and had sufficient knowledge of the material facts and circumstances relevant to the conduct of Defendants Flanigan, Bowden, and Perry, and others, and did nothing to prevent further acts of misconduct, and acquiesced in, approved and ratified the actions of Defendants Flanigan, Bowden, Aramark and Perry and are therefore liable for the actions of Defendants Flanigan, Bowden, and Perry and others.

76. The conduct of Defendants, as alleged above, constitutes gender harassment in violation of the Plaintiff's rights under Title VII of the Civil Rights Act of 1964, § § 701 et seq., 703(a)(1), as amended, 42 U.S.C.A. § § 2000e et seq., 2000e-2(a)(1), and the Civil Rights Act of 1991 in that they created a hostile and abusive work environment.

77. The actions of the Defendants, as alleged above, were intentional and demonstrated a willful, wanton and/or reckless indifference to the rights of the Plaintiff such that punitive damages should be assessed against the Defendants.

**SECOND CLAIM**

**INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS**

78. Plaintiff hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 67 above as if fully set forth herein.

79. The conduct of the Defendants as alleged above constituted extreme and outrageous conduct that was intended to cause severe emotional distress to the Plaintiff.

80. The conduct of the Defendants as alleged above was committed while they was acting as agent of both Defendant Spelman and Aramark and in the scope of and during the course of their employment with said Defendants.

81. The Defendants, after being notified on several occasions by Plaintiff, or other persons acting on Plaintiff's behalf and others, of Defendants' gender harassment of the Plaintiff, wantonly, willfully and/or recklessly failed to bring an end to the harassment of Plaintiff; and Plaintiff's immediate supervisor Perry, while acting as an agent of the Defendant Aramark in fact participated in the gender harassment of Plaintiff and was unable to stop the harassment.

82. Defendants acted with both knowledge that severe

emotional distress to the Plaintiff was substantially certain to result and with reckless indifference to the likelihood that severe emotional distress to the Plaintiff would result from their actions. Moreover, Defendants, or should have known, that the work environment created by Defendants' conduct would reasonably be perceived, and was perceived, as hostile and abusive by Plaintiff.

83. Defendants had sufficient knowledge of the material facts and circumstances regarding the actions of Defendants Flanigan, Bowden, and Perry in harassing the Plaintiff and did nothing to prevent further acts of misconduct, acquiesced in, approved and ratified the foregoing actions of Defendants Flanigan, Bowden, Perry and other employees.

84. The conduct on behalf of Defendants as alleged above did in fact cause severe emotional distress to the Plaintiff.

### THIRD CLAIM

#### NEGLIGENT HIRING, RETENTION, AND SUPERVISION OF DEFENDANT ROBERTS

85. Plaintiff hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 85 above as if fully set forth herein.

86. Defendants Spelman and Aramark knew or should have known that Defendants Flanigan and Bowden were not suited for

the particular employment.

86. Defendants Spelman and Aramark in the exercise of reasonable care should have known of Defendants Flanigan and Bowden's reputation for gender harassment and it was foreseeable that Defendants Flanigan and Bowden, with Perry's participation, would engage in gender harassment of subordinate female employees, but Defendants Flanigan and Bowden were retained after numerous complaints, and unsupervised in their employment.

87. Defendants Flanigan, Bowden, and Perry committed negligent and/or intentional torts within scope of their employment in the furtherance of Spelman and Aramark's objectives.

88. Defendants Spelman and Aramark's negligence in failure to take reasonable and prompt corrective action after Plaintiff complained about the harassment, Defendants Flanigan, Bowden and Perry subjected Plaintiff to additional harassment based on her gender.

89. Defendants Spelman and Aramark's negligence in supervising and/or retaining Defendants Flanigan, Bowden, and Perry caused Plaintiff to be subjected to harassment based on her gender.

90. Defendants Spelman and Aramark knew, or should have known, that Defendants Flanigan, Bowden, and Perry, and others,

17

were aided in the agency relationship subsequent to hiring and that the agency relationship aided Flanigan, Bowden, and Perry in the commission of harassment of female employees, including the Plaintiff, based on gender.

**PRAYER FOR RELIEF**

**WHEREFORE**, premises considered, Plaintiff respectfully prays for a judgment in her favor against Defendants, jointly and severally, as appropriate in each case, and requests the follow relief:

a. A declaration that Defendants' actions, policies and practices complained of herein violate the rights of Plaintiff as secured by Title VII, other federal law, and/or Georgia law;

b. An order enjoining Defendants from violating the above-referenced federal statute in the future;

c. Compensatory, punitive, liquidated, and other appropriate damages (including back pay and/or front pay);

d. Pre- and post- judgment interest;

e. Costs and reasonable attorneys' fees in this action; and

f. Such other and further relief as the Court deems appropriate and in the interests of justice.

**TRIAL BY JURY IS DEMANDED ON ALL COUNTS SO TRIABLE.**

Dated this 5th day of November, 2004

Respectfully submitted,

SHEPPARD & ASSOCIATES

By: _____
SANDRA JACKSON SHEPPARD
Georgia Bar No. 641967
1401 Peachtree St., Suite 500
Atlanta, Georgia 30309
(404) 870-8414
(404) 870-8415 Fax
Attorney for Plaintiff